**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**UNITED STATES of AMERICA**                                      **PLAINTIFF/RESPONDENT**


**V.**                                      **No. 13-50002**
                                      **No. 15-05101**

**ARTURO VACA-RAYA**                                      **DEFENDANT/PETITIONER**

### Report and Recommendation

Before the court is the Petitioner's Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. Section 2255 (ECF No. 143) filed May 4, 2015. The United States of America filed a Response (ECF No. 146) on June 5, 2015. The Petitioner filed a Reply (ECF No. 147) on July 10, 2015. The case was reassigned to the undersigned on August 5, 2015 and the matter is ready for Report and Recommendation.

### I. Background

On December 3, 2012, a criminal complaint was filed against Arturo Vaca-Raya ("Vaca-Raya") alleging Vaca-Raya distributed methamphetamine on or about November 16, 2012, until on or about November 28, 2012, in the Western District of Arkansas. (Doc. 1).

On January 16, 2013, Vaca-Raya was named in three counts of a seven-count Indictment filed in the Western District of Arkansas. (Doc. 14). Count One charged Vaca-Raya with conspiracy to distribute methamphetamine, Count Two charged Vaca-Raya with possession with intent to distribute more than 500 grams of a mixture containing methamphetamine, and Count Five charged Vaca-Raya with aiding and abetting in the concealment of money laundering. On March 6, 2013, Vaca-Raya was named in a Superseding Indictment in which an eighth count was added. (Doc. 43). Count Eight charged Vaca-Raya with possession of a firearm by a

convicted felon.

On April 9, 2013, Vaca-Raya appeared with counsel, David Dunagin, before the Honorable Jimm Larry Hendren for a change of plea hearing. (Doc. 61). A written plea agreement was presented to the Court that set forth that Vaca-Raya would agree to plead guilty to Count Two of the Superseding Indictment charging him with possession of more than 500 grams of a mixture containing methamphetamine with intent to distribute. (Doc. 62). The Court tentatively approved the Plea Agreement and ordered a Presentence Investigation Report ("PSR").  On June 20, 2013, the Probation Office issued Vaca-Raya's PSR. The United States had no objections, however, Vaca-Raya objected to the finding and 2-level increase in paragraph 110 that he maintained premises for the purposes of distributing a controlled substance. (Add. to PSR).

The PSR assessed a base offense level of 38 pursuant to U.S.S.G. § 2D1.1 based on Vaca-Raya being accountable for 5.8 kilograms of actual methamphetamine. (PSR, ¶ 108). Vaca-Raya received a 2-level increase for possessing a dangerous weapon (PSR, ¶ 109), a 2-level increase for maintaining a premise for the purpose of distributing a controlled substance (PSR, ¶ 110), and a 4-level increase for being an organizer or leader (PSR, ¶ 112). Vaca-Raya's adjusted offense level subtotaled 46. (PSR, ¶ 114). After receiving a 3 level decrease for acceptance of responsibility, Vaca-Raya's total offense level was determined to be 43. (PSR, ¶¶ 115 – 117).

Vaca-Raya's criminal history amounted to a score of 3 placing him in category II. (PSR, ¶ 129). Vaca-Raya faced a minimum term of imprisonment of 10 years and a maximum term of Life on Count Two. (PSR, ¶ 159). Based upon a total offense level of 43 and a criminal history category of II, Vaca-Raya's guideline imprisonment range was Life. (PSR, ¶ 160).

On August 30, 2013, the United States filed its sentencing memorandum in which it

argued the PSR correctly applied the § 2D1.1(b)(12) enhancement to Vaca-Raya's sentencing guidelines calculation along with its position that it would not object to some variance below the recommended sentencing guidelines range to a level that would recommend a term of imprisonment less than a life sentence. (Doc. 78).

On September 4, 2013, Vaca-Raya appeared with counsel, David Dunagin, for sentencing. (Doc. 78). At sentencing, the Court entertained Vaca-Raya's objection to the PSR (Sent. Tr., pp. 7 – 36). After hearing from the United States and Vaca-Raya's counsel, the Court decided the 2-level enhancement for maintaining premises for the purposes of distributing a controlled substance applied. (Sent. Tr. pp. 36 – 42). The Court then heard from the United States and Mr. Dunagin as to the parties' position on Vaca-Raya's sentence. Though advocating for a strong sentence, the United States stated it would not object to some variance below the recommended sentencing guidelines that would allow the Court to sentence Vaca-Raya to a term of imprisonment rather than a life sentence. (Sent. Tr., p. 45 – 46). Mr. Dunagin argued that a sentence of 20 – 25 years would be appropriate. (Sent. Tr., 46 – 49). The Court ultimately sentenced Vaca-Raya to 480 months imprisonment. (Sent. Tr., p. 59; Doc. 97). In affixing Vaca-Raya's sentence, the Court stated it would have sentenced Vaca-Raya to the 480 months imprisonment even it had sustained his objection to the 2-level enhancement for maintaining a premises for the purpose of distributing a controlled substance. (Sent. Tr., p. 57).

On September 16, 2013, Vaca-Raya filed a timely notice of appeal. (Doc. 108). On appeal, Mr. Dunagin, in an Anders Brief, argued the Court erred by applying the 2-level drug-house increase, considering convictions from almost 20 years earlier, and imposing the functional equivalent of a life sentence. United States v. Vaca-Raya, 552 Fed.Appx. 609 (8th Cir. 2014). Finding no nonfrivolous issues for appeal, the Eighth Circuit filed its Mandate affirming

the judgment on March 11, 2014. (Doc. 122).

On May 4, 2015, Vaca-Raya filed the instant Pro Se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "§ 2255 Motion") contending that: (1) his attorney was ineffective by failing to challenge the two level enhancement for maintaining a premises for distribution; (2) his attorney was ineffective because he did not communicate an offer from the prosecution, and (3) his attorney was ineffective because he failed to raise acceptance of responsibility upon acceptance of the plea. (Doc. 143).

## II.  Discussion

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. *U.S. Const. amend. VI.* The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000); 2254. *Cox v. Wyrick,* 642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of counsel, the Defendant must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted.

Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense).

To satisfy this "prejudice" prong, Defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *U.S. v. Rice*, 449 F.3d 887 at 897 (internal quotations omitted). Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir.2007) (citing *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir.2004)). Additionally, actual prejudice does not exist where a petitioner, at best, suffers the mere possibility of prejudice. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996) (mere possibility does not equal actual prejudice). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

Also, to the extent that Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d

654, 661 (8th Cir. 1997).

**A.  Ineffective Assistance of Counsel**

**1.  Ground One**

The Defendant first contends that his counsel performed deficiently by failing to adequately challenge the 2-level enhancement for maintaining premises for distribution of controlled substances.

The Defendant's argument seems to be that since the police observed him make illegal drug transactions at the premises but did not arrest him when they were made those transactions should not be considered by the court in determining his exercise of control over the premises. The court in *U.S. v. Miller* stated that: "Likewise, we conclude, § 2D1.1(b)(12) applies when a defendant uses the premises for the purpose of substantial drug-trafficking activities, even if the premises was also her family home at the times in question. Thus, the district court did not clearly err in finding that Mrs. Miller's use of the premises for the distribution of methamphetamine warranted a two-level increase under § 2D1.1(b)(12).." *U.S. v. Miller*, 698 F. 3d 699, 706-707.

The Defendant's trial counsel objected to the 2-level enhancement and argued against the enhancement prior to sentencing. (Add. to PSR; Sent. Tr., pp. 35 – 36). Counsel argued that the United States' evidence did not indicate Vaca-Raya was in the dominate position to exercise dominion and control over the premises. (Sent. Tr. p. 35).

The court in ruling against the Defendant stated:

It would appear to me, based on what's in the report and what Agent Rorex had to say, that it's very clear that the defendant controlled access to the premises. The unchallenged testimony is that no one was ever seen going into that residence or leaving it if Mr. Vaca-Raya was not present himself. There are indications, unobjected to in the report, that Mr. Vaca-Raya would tell people,

including Mr. Vaughn who allegedly may have had an ownership interest, he would tell them to meet him at 11 (sic) Rhodes Avenue.

There's no indication that Mr. Vaca-Raya had to seek permission from anybody to use the residence or that he had to schedule any kind of an appointment. It seems clear that any time he wished, he could say, "I'm going to 1100 Rhodes Avenue," or he could tell people bringing him drugs or people that wanted to buy drugs, he could tell them to be there without fear of anybody interfering with that. So it seems to me that clearly indicates that he was very much in charge and control there of that premises.

There's no suggestion -- I mean, even when Mr. Vaughn, who may have had some interest as an owner or lessee or whatever, but he, himself was told by Mr. Vaca-Raya to meet him there. That's mentioned in one of the paragraphs of the -- of the Pre-sentence Investigation Report. So I think the evidence is sufficient to convince me on that score that the control was essentially Vaca-Raya's, and his alone.

The criteria says the extent to which the defendant controlled access to or activities of the house, and I find that extent is 100 percent. I don't see any evidence that anybody else had any authority to set up a meeting, or to live, or to be at 1100 Rhodes Avenue other than Mr. Vaca-Raya. So I think the extent is total, or 100 percent.

Now, moving to the last matter, a factor I should consider is whether the defendant held a possessory interest – a possessory interest in the premises. Now, as Mr. Fowlkes has mentioned and discussed in his Brief some Eighth Circuit authority, the Court has upheld this enhancement even in cases where there was no clear indication of a possessory or ownership interest. So I don't read that as a -- as a mandated requirement that must be found. It's couched in terms of among the factors that may be considered, and I think the holding to which Mr. Fowlkes alludes bears out that treatment of it.

The 8th Circuit Court of Appeals also addressed the two point enhancement argument and stated that:

The district court did not clearly err by finding that Vaca-Raya maintained the residence at 1100 Rhodes Avenue for the purpose of distributing methamphetamine. See U.S.S.G. § 2D1.1(b)(12), comment. (n.17) (court should consider extent to which defendant controlled access to or activities at premises); *United States v. Miller*, 698 F.3d 699, 702, 705-06 (8th Cir. 2012) (increase applied where, although it was unclear who owned residence, defendant

controlled access to and conducted at least four transactions at residence; factual finding that increase applied is reviewed for clear error). ECF No. 122, p. 2; *U.S. v. Vaca-Raya,* 552 Fed Appx. 609, (2014). The appellate court also noted that it had reviewed the record independently and found no nonfrivolous issues for appeal. (Id.).

The Defendant's claim that his attorney was ineffective for failing to challenge the enhancement for maintaining a drug premises is not supported by the evidence.

**2. Ground Two**

The Defendant next contends his attorney was ineffective for failing to communicate the conditions of the Plea Agreement. (ECF No. 144, p. 18).

The Defendant's argument is difficult to understand but in his brief he states that: "The plea agreement was that the Petitioner Vaca-Raya, would not receive a life sentence absent goinf (sic) to trial. Petitioner Vaca-Raya, contends that he is not disturbing the conditions of the plea agreement. He in fact entered such plea voluntarily. The Petitioner solely claims that Counsel David Dunagin, was not communicating the conditions of the agreement with Petitioner and lead Petitioner to believe he would not receive a sentence which wold most likely result in his death in prison–a 480 month sentence." (ECF No. 144, p. 19).

"By Counsel David Dunagin stating that Petitioner would not serve a life sentence. That is exactly what Petitioner thought. Petitioner beleived (sic) that he would not serve the rest of his life in prison as agreed to by his Counsel and the Prosecutor. Petitioner up to date believes that he was advised as to having the opportunity to going home after serving a 'sentence of a term of years.'". (Id., p. 21).

The Supreme Court has repeatedly emphasized that the effectiveness of legal representation afforded criminal defendants is to be appraised by normative legal standards

which, when applied in a specific factual context, yield a resolution concerning whether a particular defendant received constitutionally adequate assistance of counsel. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In the guilty plea context, a lawyer need not give wholly accurate advice in order to render effective assistance; he need not correctly predict the admissibility of evidence or anticipate future judicial holdings. His advice, however, must be "within the range of competence demanded of attorneys in criminal cases." [FN7] *McMann*, supra, at 770-71, 90 S.Ct. at 1449. *U. S. ex rel. Healey v. Cannon* 553 F.2d 1052, 1057 (C.A.Ill. 1977).

The Petitioner attached the letter he received from his attorney dated March 21, 2013.  In the letter the attorney states that he is writing the letter because the Defendant "kept cutting me off and refusing to allow me to brief you.". (ECF No. 144-1).  The letter goes on to state, inter alia, that he was inclosing a copy of the plea agreement and that if he accepts the plea the government would not ask for a life sentence and that he would be facing a "term of years" but if he went to trial the government would amend the information to include prior offenses and that he would be facing a mandatory life sentence if convicted. (Id.).

The Plea Agreement, which was signed by the Defendant on April 3, 2013, and the Plea Agreement stated the maximum penalty at life in prison.  The Sentencing Guidelines placed the Defendant's total offense level at 43 with a criminal history category of II and a "guideline imprisonment range of life". (ECF No. 80, p. 25, ¶160).  At the sentencing hearing the AUSA directed the court to the government's Sentencing Memorandum and stated that the government "would not object to some variance below the recommended sentencing guidelines in this case that would allow the Court to sentence the defendant to a term of imprisonment rather than a life

sentence." (ECF No. 112, p. 45, lines 8-11).

The government abided by the terms of the plea agreement and did not seek a life sentence and the fact that the sentencing court sentenced a defendant to a term of years that he believes will be an "effective life sentence" does not violate the plea agreement or render the attorney's performance ineffective. In this case the attorney secured the dismissal of three counts and the chance for his client to be considered for a term of years rather than a mandatory life sentence and his actions or decisions cannot be considered ineffective merely because the Defendant received a term of years that he believes is excessive.

### 3.  Ground Three

In Ground Three the Defendant contends that his attorney was ineffective because he "failed to raise acceptance of Responsibility upon Petitioner's acceptance of the plea agreement." (ECF No. 144, p. 25).

The record in this case demonstrates Vaca-Raya received his 3-level decrease for acceptance of responsibility. In the PSR the probation officer recommended a 2 point reduction for acceptance of responsibility. (PSR, ¶ 115). At sentencing the United States motioned for the third point as contemplated by paragraph 116 of the PSR which the Court granted. (Sent. Tr., pp. 5 – 6). As the record demonstrates, Vaca-Raya received his 3 point reduction for acceptance of responsibility.

The Defendant's argument that his attorney was ineffective because he failed to raise acceptance of responsibility has no  merit.

### B.  Evidentiary Hearing

A section 2255 petition can be dismissed without an evidentiary hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the

allegations cannot be accepted as true because they are contradicted by the record, inherently

incredible, or conclusory. *See Delgado v. United States*, 162 F.3d 981, 983 (8th Cir.1998).

**Evans v. U.S.**  200 F.3d 549, 551 (C.A.8 (Iowa),2000)

Here, an evidentiary hearing is both unwarranted and unnecessary as all issues raised by

Vaca-Raya in his § 2255 Motion are resolvable by reviewing the record. As discussed above,

after reviewing Vaca-Raya's claims against the record and applicable law, his asserted facts do

not support cognizable claims for relief.

### C.  Certificate of Appealability:

The factors to consider when determining if a certificate of appealabiltiy should be issued

are as follows:  1) if the claim is clearly procedurally defaulted, the certificate should not be

issued; 2) even if the procedural default is not clear, if there is no merit to the substantive

constitutional claims, the certificate should not be issued; but, 3) if the procedural default is not

clear and the substantive constitutional claims are debatable among jurists of reason, the

certificate should be granted. Slack, 529 U.S. at 484–85, 120 S.Ct. 1595. *Khaimov v. Crist*  297

F.3d 783, 786 (C.A.8 (Minn.),2002).

Here there is no merit to the alleged constitutional claims and no basis to issue a

Certificate of Appealability.

### III.  Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C.

§2255 be **DISMISSED with PREJUDICE** and that **NO** Certificate of Appealability be issued.

**The parties have fourteen days from receipt of this report and recommendation in**

**which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file**

**timely written objections may result in waiver of the right to appeal questions of fact.  The**

**parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED December 2, 2015.


*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE